No. 57,908

PANCAKE HOUSE, INC., *Appellant,* v. OWEN JOSEPH REDMOND, deceased, by and through the Executrix of his estate, JOSY A. REDMOND; CHRISTOPHER J. REDMOND; CHRISTOPHER W. O'BRIEN; EDWARD J. NAZAR; all as individuals and d/b/a REDMOND, REDMOND, O'BRIEN & NAZAR, a legal partnership, *Appellees.*

(716 P.2d 575)

Opinion filed March 28, 1986.

*John Terry Moore,* of Moore & Rapp, P.A., of Wichita, argued the cause and was on the brief for appellant.

*Kurt A. Harper,* of Sherwood & Hensley, of Wichita, argued the cause and was on the brief for appellee Christopher J. Redmond.

*Greer Gsell,* of Hershberger, Patterson, Jones & Roth, of Wichita, was on the brief for appellees Owen Joseph Redmond, deceased, by and through the Executrix of his estate, Josy A. Redmond; Christopher W. O'Brien; and Edward J. Nazar.

The opinion of the court was delivered by

LOCKETT, J.: Pancake House, Inc., (PHI), filed an action against

the defendant attorneys for legal malpractice after the defendants, who had represented the plaintiff corporation for approximately twenty years, chose to represent the individual interests of certain stockholders of the corporation against the corporate client. The plaintiff contends that the defendants' filing of a lawsuit against Pancake House, Inc., was malicious in nature, negligent, a breach of a fiduciary duty and a breach of implied contract. A motion for judgment on the pleadings was granted to the defendants on the grounds that the action was barred by the statute of limitations. Plaintiff appeals.

Except for two years, from 1960 through 1979 the defendants' law firm, or its predecessor, prepared the corporate documents and drafted the corporate minutes and lease extensions for Pancake House, Inc.

Following the death in 1980 of one of the two principal stockholders, Jay Conover, the remaining shareholders of PHI were at odds with each other concerning the ownership of stock, the effect of a shareholders' agreement and the management of the corporation. On October 1, 1980, Sherman Sampson, the other principal stockholder and president of PHI, filed a suit against the estate of Jay L. Conover, seeking the enforcement of a buy-sell agreement which required PHI to buy Conover's stock in PHI.

On October 16, 1980, defendant Redmond filed a suit on behalf of the Conover family against Sampson and PHI, alleging that, as a result of the disputes between the families, the corporation was deadlocked. The suit asked that a custodian for the corporation be appointed and, in the event that matters were not resolved, the corporation be dissolved. The court issued a temporary restraining order enjoining Sampson "from performing any acts as President in violation of the Kansas Corporation Code; from issuing any further dividends; from increasing his salary; or from taking any acts as President which are at variance in which the corporation functioned prior to the death of Jay L. Conover."

On November 10, 1980, the court denied the injunction requested by the defendants' attorneys, but did find PHI was deadlocked. A restraining order was issued requiring PHI to pay all dividends owed to the Conover estate and other specified stockholders into the clerk of the district court.

On December 31, 1980, Christopher Redmond withdrew from representation of the Conovers in both the suit filed by Sampson against the estate and the suit filed by the Conovers against PHI. Another firm assumed representation for the Conovers.

The two cases were consolidated and heard on April 26, 1982. A journal entry filed on September 7, 1982, ordered PHI to purchase all of the Conover stock and awarded certain other damages for misappropriation of corporate vehicles by the Conovers to PHI.

On August 26, 1983, Sampson and PHI sent a demand letter to PHI's former law firm, claiming that the suit Redmond filed against PHI was without probable cause, was malicious, and was a breach of fiduciary duty. When Redmond failed to reply to the demand, the plaintiff filed the present suit on October 25, 1983. PHI's petition alleged: (1) a claim for malicious prosecution; (2) that the defendants' act in filing suit against plaintiff was "negligence by the defendant attorney" against PHI; (3) the defendants committed an intentional tort and breach of a fiduciary duty; and (4) the defendants breached an express or implied contract between PHI and the defendant attorneys. The defendants filed a motion to dismiss, claiming the statute of limitations had run for all claims. The district court sustained the motion and plaintiff appeals.

PHI argues that it has alleged a cause of action in contract for breach of an implied agreement and that the three-year statute of limitations applies. K.S.A. 60-512(1). The defendants contend that the cause of action is in tort, not in contract, and that the two-year statute of limitations has run. K.S.A. 60-513(a)(4).

A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties. *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976).

Legal and medical malpractice generally constitute both a tort and a breach of contract. An action for liability of an attorney on

the grounds of negligence for failure to discharge his professional duty to a client rests on the employment contract and therefore is contractual in nature. Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the essential claim of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort. *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984).

Not all malpractice actions in Kansas may be deemed tort actions, however. In *Juhnke v. Hess,* 211 Kan. 438, 506 P.2d 1142 (1973), the plaintiff sued his attorney for failure to file a timely appeal on behalf of his client in a condemnation proceeding. The court said this was a breach of a specific contract—failure to do that which the attorney expressly agreed to perform. The real basis of the claim for relief was financial loss resulting from failure to discharge a contractual obligation (proof of which contract, breach and loss is another matter). Consequently, the claim for relief alleged was one founded on unwritten contract to be governed by the three-year statute of limitations provided in K.S.A. 60-512 (1).

While other jurisdictions are divided as to whether legal malpractice may be categorized as a cause of action in tort or one in contract, Kansas has held that where a legal duty is imposed by law, the cause of action is in tort. Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract. In the present case, the plaintiff contends that the defendants' malpractice involved negligence, a conflict of interest, and a breach of implied contract and of fiduciary duty. These all had to do with the defendants' filing a lawsuit against the plaintiff. The defendants' action was not a part of any express or implied contract. Therefore the action must sound in tort. The district court was correct when it dismissed PHI's fourth claim that the attorneys had a duty to PHI based on implied contract.

The plaintiff's next claim, that the statute of limitations was tolled until the suit Redmond filed against PHI was settled, is actually an accrual argument. PHI is actually arguing that its suit for malpractice did not accrue until it suffered substantial dam-

ages, not that the statute was tolled. The defendants contend that on October 16, 1980, when the suit against PHI was filed, the cause of action accrued and the statute of limitations began to run.

In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion. *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 548, 545 P.2d 312 (1976); *Yeager v. National Cooperative Refinery Ass'n*, 205 Kan. 504, 470 P.2d 797 (1970).

Depending upon the facts and circumstances of each case, there are at least four theories which can apply to attorney malpractice in Kansas as to when the accrual of a cause of action occurs and the statute of limitations begins to run. These include:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.

For cases discussing all four points see Annot., 32 A.L.R.4th 260; ABA/BNA Lawyers' Manual on Professional Conduct § 301:901 (1985); Mallen and Levit, Legal Malpractice § 388 *et seq.* (2d ed. 1981).

In a similar case, *Chavez, Executrix v. Saums*, 1 Kan. App. 2d 564, 565, 571 P.2d 62, *rev. denied* 225 Kan. 843 (1977), plaintiff seller employed an attorney to represent him in selling some stock. After an agreement to sell had been approved, the seller refused to honor the sale, refunded the purchase price to the buyer and discharged his attorney. The buyer decided to enforce the stock purchase and retained the seller's former attorney. The

attorney returned the seller's check to his former client's new attorney and filed an action against his former client. A decision was rendered against the seller on August 20, 1974.

On March 22, 1976, the seller then filed an action against his former attorney and the purchaser, alleging he had suffered substantial injury when his former attorney returned his check to him and chose to represent the buyer. The Court of Appeals determined that the tort action accrued when the act alleged by the seller to have caused substantial injury occurred. The court then determined that after the alleged injury occurred, the seller had failed to file his action against his former attorney within the two year limitation. K.S.A. 60-513.

The substantial injury theory has been used in other types of tort cases. For example, see *Keith v. Schiefen-Stockham Insurance Agency, Inc.*, 209 Kan. 537, 498 P.2d 265 (1972); *Webb v. Pomeroy*, 8 Kan. App. 2d 246, 655 P.2d 465 (1982).

Here, PHI alleges that the malpractice committed by the defendant was the filing of the suit against PHI. PHI contends, however, that substantial damage was not suffered by it until after the trial and the filing of the journal entry on September 7, 1982. It argues that the malpractice claim accrued at that time because PHI could not file the action against its former attorney until the original action filed by its former attorney had been decided in its favor. *Nelson v. Miller*, 227 Kan. 271, 607 P.2d 438 (1980).

We agree that PHI did not suffer any damages until it had to defend against the suit filed by its former attorneys. It was not until the journal entry of judgment was filed on September 7, 1982, that it suffered sufficient damages for the tort to accrue. PHI filed this suit on October 25, 1983, within two years of the date when the action accrued. Therefore, the district court should not have ordered PHI's tort claims dismissed.

The attorneys contend that Count I of PHI's petition alleges a claim for malicious prosecution. K.S.A. 60-514(2) requires actions for malicious prosecution to be brought within one year. An action for malicious prosecution cannot be brought if the original action is still pending and undetermined. *Nelson v. Miller*, 227 Kan. at 280. *Harper v. Cox*, 113 Kan. 357, 214 Pac. 775 (1923).

The district court, in the actions brought by PHI against the Conovers and by the Conovers against PHI, issued a written

memorandum decision on June 29, 1982. That was incorporated in a formal journal entry on September 7, 1982. This suit was filed on October 25, 1983, more than one year after the termination of the suit against PHI. Therefore, the district court correctly found that a cause of action for malicious prosecution was barred by the statute of limitations.

It is held that the plaintiff's alleged cause of action was based upon the attorney-client relationship and was thus a breach of a duty imposed by law, a tort. Under the factual circumstances stated, the plaintiff's claim against its former attorney did not accrue until the plaintiff had suffered substantial injury.

Other issues raised need not be discussed.

The judgment of the district court is affirmed in part and reversed in part. The case is remanded to the district court for further proceedings.

HOLMES, J., not participating.