(839 P.2d 45)

No. 66,751

JACK R. HUNT, *Appellant,* v. KMG MAIN HURDMAN and
BRENT OLNEY, *Appellees.*

Opinion
filed September 18, 1992.

James T. McIntyre, of McMaster & McMaster, of Wichita, for the
appellant.

Christopher W. O'Brien and Calvin L. Wiebe, of Triplett, Woolf & Gar-
retson, of Wichita, for the appellees.

Before GERNON, P.J., DAVIS, J., and ROBERT J. SCHMISSEUR,
District Judge, assigned.

DAVIS, J.: This is an action brought by a minority shareholder
against bank auditors for breach of contract, negligence, and
breach of implied warranties. The trial court held that the gra-
vamen of the action was in tort and, thus, barred by a two-year
statute of limitations. We affirm.

In March 1986, Haysville State Bank (the bank) contracted with KMG Main Hurdman to perform an audit. KMG assigned Brent Olney to be the audit partner. The audit was completed in January 1987. In September 1987, the Federal Deposit Insurance Corporation issued a cease and desist order to prevent the bank from engaging in certain practices, including certain speculative investments. The cease and desist order was brought to the attention of the shareholders, including Jack Hunt, the appellant, in September 1987.

Hunt filed suit in December 1990, asserting three grounds against KMG and Olney: breach of a written contract, negligence, and breach of implied warranties. Hunt has conceded that the claims of negligence and breach of implied warranties are barred by the two-year statute of limitations. Hunt asserted before the district court and now on appeal that KMG and Olney breached a written contract by failing to discover and point out in the audit report the bank's improper valuation of certain speculative investments. The district court treated KMG and Olney's motion to dismiss, supported by an affidavit from Olney, as a motion for summary judgment. The court then granted dismissal, finding the breach of contract claim was in fact a claim sounding in tort and barred by the two-year statute of limitations.

The district court specifically declined to rule on other issues raised, including whether Hunt lacked standing and whether he was a proper representative plaintiff to bring a derivative action. Because the trial court's ruling disposed of the case and because we affirm, we do not address these issues.

The question presented is one of law, and our review is unlimited. Under any interpretation, if Hunt's action is contractual, the five-year statute of limitations pertaining to actions involving written contracts applies and his action is timely. K.S.A. 60-511. If, however, the trial court was correct that Hunt's action is a tort action, the two-year statute of limitations applies and the action is time barred. K.S.A. 1991 Supp. 60-513(a)(4).

Hunt singles out the following paragraph of the written engagement letter to support his contention that this action is contractual in nature:

"We will advise you promptly if we discover conditions which cause us to believe that material errors or defalcations or other irregularities may exist

or if we encounter other circumstances that require us to extend our work significantly. However, an examination based on selective testing is subject to the inherent risk that material errors or irregularities, if they exist, will not be detected.

"At the conclusion of our examination we will submit our report with respect to the financial statements. We will separately advise you of any material weaknesses in internal accounting control that come to our attention and make any recommendations we may have for improving operational procedures to the extent that such matters come to our attention."

Hunt argues that the contract called for a specific result which was not fulfilled by the auditors, resulting in a breach of contract. Hunt's petition addresses KMG and Olney's specific failure to identify for the owners unsafe investments of the bank, alleging that such identification specifically was required by the contract of employment. On the other hand, the auditors claim that the contract does not call for a specific result, but requires the auditors to use sound judgment in accord with their professional standards to identify for the owners problem areas of the bank, including questionable investment practices. They argue that the gravamen of the action is a failure to exercise due care in performing a contractual obligation; and that the action is based on negligence, not on the contract.

The determination of whether a particular action is based on contract or in tort is not always an easy one. The difficulty in approaching this subject is highlighted in the case of *Tamarac Dev. Co. v. Delamater, Freund & Assocs.,* 234 Kan. 618, 619, 675 P.2d 361 (1984) (quoting Prosser, The Law of Torts § 92, pp. 621-22 [4th ed. 1971]):

"These cases, however, . . . are inconsistent. The inconsistencies in this area of law have been confirmed by Professor Prosser when he stated:

'Frequently, where either tort or contract will lie and inconsistent rules of law apply to the two actions, the question arises whether the plaintiff may elect freely which he will bring, or whether the court must itself decide that on the facts pleaded and proved the "gist" or "gravamen" of his cause of action is one or the other. As to this the decisions are in considerable confusion, and it is difficult to generalize.

'Where the particular point at issue is one of adjective law only, affecting the suit or its procedure, but not the merits of the cause of action, the courts have tended to be quite liberal in giving the plaintiff his freedom of choice, and have upheld his action of tort or contract as he has seen fit to bring it. Likewise where the point is one affecting substantive rights, but the claim is one for damages to property or to pecuniary interests only, the

tendency has been, with some occasional dissent, to allow the election. But when the claim is one for personal injury, the decision usually has been that the gravamen of the action is the misconduct and the damage, and that it is essentially one of tort, which the plaintiff cannot alter by his pleading. . . . Actually the courts appear to have preserved a great deal of flexibility, and to have been influenced in their decisions by their attitude toward the rule of law in question.' " 234 Kan. at 619.

Kansas cases have addressed the question in the context of doctors, attorneys, architects, and accountants. In *Noel v. Proud,* 189 Kan. 6, 367 P.2d 61 (1961), a physician promised a patient, Noel, that the operation he would perform would not worsen Noel's existing partial hearing loss. 189 Kan. at 7. That warranted result was unfulfilled as evidenced by Noel's subsequent irremediable, functionally complete hearing loss. 189 Kan. at 7. The court held that this was a "special contract for a particular result" and fell under the statute of limitations for contracts. 189 Kan. at 11, 13.

In *Juhnke v. Hess,* 211 Kan. 438, 506 P.2d 1142 (1973), an attorney was employed to appeal a condemnation award. The client brought suit against his attorney for the failure of the attorney to file a timely appeal. In his petition, plaintiff alleged that because he could not appeal the award, he was forced to accept the original appraiser's amount and was therefore damaged. 211 Kan. at 439. The court held that plaintiff's petition pled a "breach of a specific contract—failure to do that which [the attorney] expressly agreed to perform," namely, file an appeal. 211 Kan. at 441. Under these circumstances, the action was contractual in nature.

We addressed the question in *Chavez, Executrix v. Saums,* 1 Kan. App. 2d 564, 571 P.2d 62, *rev. denied* 225 Kan. 843 (1977). We held that where there is both a contractual relationship and a relationship that gives rise to a legal duty such as the attorney-client relationship, the breach of that legal duty gives rise to a tort action. 1 Kan. App. 2d at 566. If the *"gravamen of the action is a breach of the legal duty and not of the contract itself, the action is in tort."* 1 Kan. App. 2d at 566. In *Chavez,* the attorney had represented the deceased father of Chavez in a sale of stock. After the father refused to complete the sale of stock, the attorney, now no longer representing the father, filed an action on

behalf of the buyer. 1 Kan. App. 2d at 565. Since the act of representing the buyer was not part of the original contract between the father and the attorney, the violation was a violation of the duty owed to the client by his attorney. We held that the cause of action then "must be interpreted as founded in tort." 1 Kan. App. 2d at 566.

A similar situation existed in *Pancake House, Inc. v. Redmond,* 239 Kan. 83, 716 P.2d 575 (1986). In *Pancake House,* the attorney, after representing Pancake House, Inc., then represented shareholders in an action against the corporation. 239 Kan. at 84. The action complained of, the filing of the suit on behalf of the shareholders, was not connected to any contractual obligation. Because it was a violation of a duty imposed by law instead of a duty imposed by the contract, the action was of a delictual nature. 239 Kan. at 86.

We again revisited this issue in *Pittman v. McDowell, Rice & Smith, Chtd.,* 12 Kan. App. 2d 603, 752 P.2d 711, *rev. denied* 243 Kan. 780 (1988). In *Pittman,* the attorney had agreed to file a journal entry setting out an agreed amount of child support between Pittman and her ex-husband. 12 Kan. App. 2d at 605. We found that the failure to file the journal entry was a breach of a specific duty imposed by the contract, and therefore the action was to enforce the contract, not to seek recovery based in tort. 12 Kan. App. 2d at 613.

The auditors rely on the case of *Brueck v. Krings,* 230 Kan. 466, 638 P.2d 904 (1982). In that case, a CPA firm was hired to perform an audit of a savings and loan association. Brueck and others sued the auditors for, *inter alia,* "breaching implied and express warranties." 230 Kan. at 469. However, the actual complaint alleged a failure to perform the audits in accordance with the duties imposed on the auditors, not by the specific terms of the contracts, but by the Kansas savings and loan code, Kansas securities law, and the professional standards of the accounting profession. 230 Kan. at 469-70. As such, the court concluded that this was a tort claim, not a contract action.

*Tamarac,* 234 Kan. 618, sheds some light on the question. A housing developer contracted with an engineering/architectural firm for various services. In discussing the question as to whether the action sounded in tort or contract, the Supreme Court noted:

" 'The difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law.' " 234 Kan. at 619-20. While the court noted that in some cases elements of both contract and tort are present, it found that the key difference is whether the contract calls for "a specific result." 234 Kan. at 621. *Tamarac* concluded that the action was contractual in nature, distinguishing *Brueck* because specific statutory duties covered accountants, while none existed for architects. 234 Kan. 621.

Other jurisdictions have also dealt with this issue. Perhaps the following two cases are representative of the divergent approaches on this question throughout the country.

The California Supreme Court, whose holdings closely resemble the law in this state, stated in *L. B. Laboratories, Inc. v. Mitchell,* 39 Cal. 2d 56, 62-63, 244 P.2d 385 (1952):

" '[T]he obligation upon which a cause of action is founded may be either contractual or delictual in nature. . . .

" 'For the designation of actions as contractual or delictual, it is to be noted that a contract is defined as an agreement to do or not to do a certain thing, and a tort as any wrong, not consisting in mere breach of contract, for which the law undertakes to give the injured party some appropriate remedy against the wrongdoer. If a cause of action arises from a breach of a promise, the action is contractual in nature; if it arises from the breach of a duty growing out of the contract, it is delictual, and a tort or trespass is none the less such because it also involves a breach of contract. There is obviously some overlapping here, and where it is not clear to which class an action belongs, it will ordinarily be construed as in contract rather than in tort. . . .

" '. . . 'In general, however, actions based on negligent failure to perform contractual duties, such as those owing from a hospital or physician to a patient, from an employer to an employee, and from a landlord to a tenant, although containing elements of both contract and tort, are regarded as delictual actions, since negligence is considered the gravamen of the action.' [Citation omitted.]" 39 Cal. 2d at 62-63.

*L. B. Laboratories, Inc.,* is a case similar to *Juhnke* in that the accountant specifically agreed to file the corporation's income tax returns by a date certain but did not do so. 39 Cal. 2d at 63. The court concluded that this constituted a breach of a specific contractual duty and distinguished the case from "an accountant who is employed generally to audit the employer's books where

he assumes the general obligation to exercise due care." 39 Cal. 2d at 63.

The same result, but for opposite reasons, was reached in the case of *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 545 F. Supp. 1314 (S.D.N.Y. 1982). In this case, a mutual funds group sued its auditors, Arthur Andersen & Company, for, *inter alia,* breach of contract for failing to discover and disclose in the audit certain irregularities. Not unlike the auditors in this case, Arthur Andersen had agreed in its engagement letter to disclose any irregularities it discovered. The court found this to be a specific duty and a breach of contract under New York law.

"The engagement letters generally require the exercise of ordinary care consistent with GAAS and GAAP, but do contain a specific representation that any irregularities that were discovered by AA would be revealed to FOF. . . . On balance, we find that AA's specific undertaking to reveal irregularities is actionable as a contractual duty separate and independent from the obligation to use due professional care in its audits. . . . AA may have had a general duty to watch out for fraud, and to exercise its professional judgment in deciding how to deal with fraud if it was discovered, but the engagement letter specifically obligates AA to disclose to FOF any irregularities that it discovers." 545 F. Supp. at 1364.

The Kansas, California, and New York cases cannot be reconciled. The authorities in Kansas support the trial court's characterization of Hunt's claim as a claim based in tort. While elements of contract and tort are present, the engagement letter in this case does not call for a "specific result" as in *Proud, Juhnke,* and *Pittman.* Not unlike *Brueck,* the gravamen of the action by Hunt is based on the failure of the auditors to perform duties imposed upon them by law. Thus, the action is more in the nature of a violation of a duty imposed by law, instead of failure to perform a duty arising by reason of the agreement. While the letter of engagement required the auditors to perform an audit, the gist of the action is that the auditors failed to discover and identify in the audit report the bank's improper valuations of certain speculative investments. The challenge by Hunt is not that the auditors failed to perform the contract, but rather that they failed to perform it with due care.

We, like the trial court, conclude that the gravamen of this action is one in tort, not in contract. The action is therefore barred by the two-year statute of limitations.

Affirmed.