Kathy L. KAUL, Plaintiff,

v.

**Attorney General Robert STEPHAN, Defendant.**

**No. 91–4118–R.**

United States District Court,
D. Kansas.

July 20, 1993.

Pantaleon Florez, Jr., Florez & Frost, P.A., Topeka, KS, for plaintiff.

Terry D. Hamblin, John W. Campbell, Office of Atty. Gen., Kansas Judicial Center, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is a § 1983 action arising from the execution of two search warrants upon plaintiff's place of business. The case is now before the court upon defendant's motion to dismiss or, in the alternative, for summary judgment. As explained below, the court believes that defendant's motion has some merit but that plaintiff should be permitted an opportunity to file a second amended complaint.

### Procedural history

Plaintiff filed this case on June 21, 1991 in response to a criminal action filed against plaintiff in the state district court for Jackson County, Kansas. The complaint sought only declaratory and injunctive relief. On the same day, this court denied plaintiff's motion for a temporary restraining order against the criminal action, citing *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). On January 9, 1992, this court granted defendant's motion to dismiss again on *Younger* grounds. However, the court noted that plaintiff had filed a motion to amend to add a claim of damages against defendant in his personal capacity. The court permitted the U.S. Magistrate Judge to decide whether the motion to amend should be granted. Plaintiff was permitted to proceed with an amended complaint which added a damages claim against defendant in his personal capacity on February 13, 1992. This was after the State dismissed one of the two criminal counts against plaintiff and plaintiff was acquitted of the other count.

The amended complaint alleges the following. Plaintiff is a Citizen Band Potawatomie Indian who owned the Indian Country General Store located on the Potawatomie Indian Reservation in Jackson County, Kansas. Defendant is the Attorney General of Kansas. Plaintiff's store opened on November 1, 1990. Prior to the store opening, plaintiff submitted a business tax application to the State of Kansas Department of Revenue. In the application, plaintiff alleged that she was exempt from sales tax because she was going to operate her business on an Indian reservation. The application was denied. The complaint further alleges that defendant secured two search warrants which were executed upon plaintiff's business on June 18, 1991. Approximately 7,000 cartons of cigarettes were seized along with business records of plaintiff. The amended complaint asserts:

11. The search warrants were issued under the guise of enforcing an alleged willful "failure to make retail sales tax returns a violation of K.S.A. 79–3615(g)" and possessing "more than 200 cigarettes without required tax indicia affixed thereto in violation of 79–3221(a)."

The complaint also alleges that plaintiff's business loan was called by a bank because of defendant's actions and that defendant told bank representatives at the store that he had "shut her down for good and locked her doors and she would be arrested by the end of the week." Finally, the amended complaint asserts that defendant has attempted and continues to attempt to collect taxes upon goods sold by plaintiff. Plaintiff claims that such efforts are unlawful and in violation of plaintiff's rights under the laws and Constitution of the United States because the United States has not authorized tax collection upon sales by Indians on the Potawatomie Indian Reservation.

Defendant filed the instant motion to dismiss or, in the alternative, for summary judgment on April 30, 1992. Considerable time passed while it was determined whether plaintiff could conduct discovery before responding to the defendant's motion. Finally, on September 1, 1992, the U.S. Magistrate Judge denied discovery and directed plaintiff to respond to the motion to dismiss within twenty days. Plaintiff received four extensions of time to respond to the motion before filing a response on December 11, 1992. Then, on January 5, 1993, plaintiff filed a second motion to amend the complaint. The motion, which would have permitted plaintiff to add a party defendant and to elaborate upon and specify plaintiff's claims for relief, was denied without prejudice to its reassertion pending a decision upon the instant motion to dismiss.

### Legal standards

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). The complaint's allegations must be construed in the light most favorable to the plaintiff and the plaintiff's allegations accepted as true. *Scheuer v. Rhodes,* 416

U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the plaintiff. *Barber v. General Electric Co.*, 648 F.2d 1272, 1276 n. 1 (10th Cir.1981). Summary judgment is proper only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Under this rule, the initial burden is on the moving party to show the court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party's burden may be met when that party identifies those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2552.

Once the moving party has met these requirements, the burden shifts to the party resisting the motion. The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. The party resisting the motion "may not rest upon the mere allegations or denials of his pleadings ..." to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of a scintilla of evidence will not avoid summary judgment; there must be sufficient evidence on which a jury could reasonably find for the nonmoving party. *Id.* at 251, 106 S.Ct. at 2511 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1872)).

### Uncontroverted facts

For the purposes of the instant motion, most of the facts asserted by each side in their memoranda are uncontroverted. Plaintiff's alleged uncontroverted facts include the following: When plaintiff submitted an application for a Kansas retailers' sales tax identification number, the application was denied because the Kansas Department of Revenue determined that plaintiff was not required to collect or remit or file a return for sales taxes since she operated her store on an Indian reservation. Plaintiff possessed two letters from the Department of Revenue dated June 23, 1989 and November 7, 1990 which provided support for her claim of exemption. At the time that the search warrants were executed, plaintiff showed defendant at least one of the letters. An assistant attorney general stated they did not care about the letter, and the search proceeded.

Defendant's motion relates the following in a list of uncontroverted facts. The applications for the search warrants were accompanied by an affidavit from Mark Ciardullo, bureau chief of the business tax bureau of the Kansas Department of Revenue. The affidavit stated that plaintiff did not have a current valid Kansas retailers' sales tax registration certificate and that plaintiff was not remitting sales tax to the Department. The search warrants were issued by the Honorable Tracy D. Klinginsmith of the District Court of Jackson County, Kansas. As a result of the search, misdemeanor proceedings were brought against plaintiff. Plaintiff was charged with willfully failing to pay retail sales tax and with possession of more than 200 untaxed cigarettes. The Honorable Gary L. Nafziger issued an opinion holding that the court had subject matter jurisdiction to hear the case. During the trial of the case, the State voluntarily dismissed the count charging plaintiff with failing to pay retail sales tax. The jury found plaintiff not guilty of the count alleging possession of untaxed cigarettes. The cigarettes were returned to plaintiff a little more than a month after they had been seized. Plaintiff's business records were returned following the trial of the case.

To summarize the above-stated facts, the search warrants in question were applied for to investigate the charge that plaintiff was willfully failing to pay state sales tax and that she possessed untaxed cigarettes. Ironically, the applications for the search warrants were supported by an affidavit from a Department of Revenue official stating that plaintiff had no sales tax certificate and was not remitting sales taxes to the Department, even though

the same Department had turned down plaintiff's application for such a certificate on the grounds that plaintiff was exempt from paying sales taxes. Moreover, the search warrants were executed even though plaintiff showed the law enforcement officers a letter from the Department of Revenue which suggested that plaintiff was exempt from the sales tax requirements.

### Motion to file a second amended complaint

The motion to file a second amended complaint and plaintiff's apparent effort to argue from the proposed second amended complaint have placed this case in an awkward position. At this point in the proceedings, the motion has been denied without prejudice by the U.S. Magistrate Judge. Nevertheless, plaintiff's response to the instant motion, which was filed before the motion to file a second amended complaint was filed or ruled upon, makes arguments which appear to assume that the motion has been granted. Not only does plaintiff make references as if a second defendant has been added to the case, but also plaintiff assumes that she has stated a claim for a search and seizure without probable cause. These items can be found in the proposed second amended complaint. However, they are missing from the amended complaint, even looking at the document in a light most favorable to plaintiff.

There appear to be two possible claims stated in the amended complaint: 1) that defendant acted without jurisdiction when he attempted to enforce state tax laws against plaintiff; and 2) that defendant damaged plaintiff when he told a bank representative that plaintiff's business would be shut down for good and plaintiff would be arrested. The court is doubtful that such a statement (which is not alleged to have been made falsely) supports a cause of action. Nor is it the focus of the parties' arguments in this case.

### Issues raised by defendant's motion

Defendant's motion raises a number of issues which the court shall discuss in the order they are raised in defendant's memorandum in support of the motion.

■ 1. *Collateral estoppel* Defendant argues that plaintiff's case is premised upon a contention that defendant had no jurisdiction to enforce state tax laws against plaintiff's business on the reservation via criminal proceedings. Defendant asserts that plaintiff lost her jurisdictional argument during the state court proceedings and that this determination precludes going forward with this case.

■ We hold that the record and the pleadings do not permit the court to dismiss this case or grant judgment for defendant in this case upon these grounds. Federal courts accord preclusive effect to issues decided previously by a state court when the courts of that state would apply issue preclusion under the same circumstances and if the party against whom the earlier decision is asserted has had a full and fair opportunity to litigate the issue. See *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir.1991). The elements of collateral estoppel in Kansas are: "1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; 2) the parties must be the same or in privity, and 3) the issue litigated must have been determined and necessary to support the judgment." *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988).

Since plaintiff was not convicted of the charges against her in state court, we do not believe the decisions of the state court judge can be given preclusive effect. We are unaware of any procedure by which plaintiff could have appealed the jurisdictional decision in her case. After final judgment on the criminal charges was rendered in her favor, any appeal would be moot. Therefore, plaintiff did not have a full and fair opportunity to litigate the jurisdiction issue, and collateral estoppel should not be applied. See *Dixon v. Richer, supra* (no full and fair opportunity to litigate probable cause issue following acquittal); *Wilson v. Steinhoff,* 718 F.2d 550, 552 (2d Cir.1983) (same result regarding issues arising from apartment search); *Glover v. Hunsicker,* 604 F.Supp. 665, 666 (E.D.Pa. 1985) (same); *Jones v. Saunders,* 422

F.Supp. 1054 (E.D.Pa.1976) (same); see·also, *Wilkinson v. Ellis,* 484 F.Supp. 1072, 1087–88 (E.D.Pa.1980).[1]

■ 2. *Law of the Case* Defendant argues that the court already dismissed plaintiff's claims for injunctive and declaratory relief when we ruled earlier, pursuant to *Younger* abstention, that the court would not interfere with pending criminal proceedings against plaintiff by deciding plaintiff's claims for declaratory and injunctive relief. Defendant contends this ruling controls any current claims for declaratory and injunctive relief.

The court was not precise in its language in the previous order in this case. The court stated we would refrain from deciding plaintiff's claims for declaratory and injunctive relief but would permit the case to continue upon a damages claim if the U.S. Magistrate granted a pending motion to amend the complaint by adding a damages claim. Otherwise, we said that the case would be closed. Thereafter, an amended complaint was filed with a damages claim. But, the amended complaint retained claims for declaratory and injunctive relief. Of course, there is no pending criminal proceeding at the current time.

> "The law of the case doctrine is 'a restriction self-imposed by the courts in the interest of judicial efficiency. It is a rule based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided.' *Fox v. Mazda Corp. of America,* 868 F.2d 1190, 1194 (10th Cir.1989) (citations omitted). The law of the case doctrine 'encompasses a court's explicit decisions, as well as those issues decided by necessary implication.' *Williamsburg Wax Museum v. Historic Figures, Inc.,* 810 F.2d 243 (D.C.Cir.1987) (citations omitted)."

*Anthony v. Baker,* 955 F.2d 1395, 1397 n. 1 (10th Cir.1992).

The dismissal of the declaratory and injunctive relief claims was implicit in our previous order. Otherwise, we would not have directed that the case be closed if plaintiff did not amend the complaint to add a damages claim. Plaintiff has not asked for reconsideration of this decision. Under the law of the case, we believe the declaratory and injunctive relief claims should be considered as dismissed.

3. *Eleventh Amendment immunity* Plaintiff has stated that she is making no claim for damages against defendant in his official capacity. Therefore, the Eleventh Amendment should not be a factor in this case.

4. *Absolute immunity* Defendant asserts that he is absolutely immune as a prosecutor for the actions he is alleged to have committed in the amended complaint. The Supreme Court recently reviewed its·case law in this area in *Buckley v. Fitzsimmons,* — U.S. —, —, 113 S.Ct. 2606, 2613, 125 L.Ed.2d 209 (1993):

> We have recognized, however, that some officials perform "special functions" which, because of their similarity to functions that would have been immune when Congress enacted § 1983, deserve absolute protection from damages liability. *Id.,* [*Butz v. Economou,* 438 U.S. 478,] at 508, [98 S.Ct. 2894, at 2911, 57 L.Ed.2d 895]. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed,* 500 U.S., [—,] at — [111 S.Ct. 1934, 1935, 114 L.Ed.2d 547]; *Antoine v. Byers & Anderson, Inc.,* 508 U.S. —, —, and n. 4 [, 113 S.Ct. 2167, 2169, and n. 4, 124 L.Ed.2d 391] (1993). Even when we can identify a common-law tradition of absolute immunity for a given function, we have considered "whether § 1983's history or purposes nonetheless counsel against recognizing the same immunity in § 1983 actions." *Tower v. Glover,* 467 U.S. [914], at 920, [104 S.Ct. 2820,

---

1. If the amended complaint was broadly construed to contain a lack of probable cause claim, we would also hold that collateral estoppel did not apply for the following reasons. Plaintiff did not have a full opportunity to litigate the issue

through an appeal. Secondly, the substantive Fourth Amendment issue was never decided by the state court. Finally, the decision upon the motion to suppress was not "necessary to support the judgment" in state court.

2824, 81 L.Ed.2d 758]. Not surprisingly, we have been "quite sparing" in recognizing absolute immunity for state actors in this context. *Forrester v. White*, 484 U.S. 219, 224, [108 S.Ct. 538, 542, 98 L.Ed.2d 555] (1988).

In determining whether particular actions of government officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, we have applied a "functional approach," *see, e.g., Burns*, 500 U.S., at ——— [, 111 S.Ct. at 1935], which looks to "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White*, 484 U.S., at 229 [, 108 S.Ct. at 545]. We have twice applied this approach in determining whether the functions of contemporary prosecutors are entitled to absolute immunity.

In *Imbler v. Pachtman*, 424 U.S. 409, [96 S.Ct. 984, 47 L.Ed.2d 128] (1976), we held that a state prosecutor had absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial. Noting that our earlier cases had been "predicated upon a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it", *id.*, at 421, [96 S.Ct. at 990], we focused on the functions of the prosecutor that had most often invited common law tort actions. We concluded that the common-law rule of immunity for prosecutors was "well settled" and that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983." *Id.*, at 424, [96 S.Ct. at 992]. Those considerations supported a rule of absolute immunity for conduct of prosecutors that was "intimately associated with the judicial phase of the criminal process." *Id.*, at 430, [96 S.Ct. at 994]. In concluding that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983," we did not attempt to describe the line between a prosecutor's acts in preparing for those functions, some of which would be absolutely immune, and his acts of investigation

or "administration," which would not. *Id.*, at 431, and n. 33, [96 S.Ct. at 996, and n. 33].

We applied the *Imbler* analysis two Terms ago in *Burns v. Reed*, 500 U.S. ——— [, 111 S.Ct. 1934] (1991). There the § 1983 suit challenged two acts by a prosecutor: (1) giving legal advice to the police on the propriety of hypnotizing a suspect and on whether probable cause existed to arrest that suspect, and (2) participating in a probable-cause hearing. We held that only the latter was entitled to absolute immunity. Immunity for that action under § 1983 accorded with the common-law absolute immunity of prosecutors and other attorneys for eliciting false or defamatory testimony from witnesses or for making false or defamatory statements during, and related to, judicial proceedings. *Id.*, at ——— – ——— [, 111 S.Ct. at 1937]; *id.*, at ——— [, 111 S.Ct. at 1935] (SCALIA, J., concurring in judgment in part and dissenting in part). Under that analysis, appearing before a judge and presenting evidence in support of a motion for a search warrant involved the prosecutor's " 'role as advocate for the State.' " *Id.*, at ——— [, 111 S.Ct. at 1937], quoting *Imbler*, 424 U.S., at 431, n. 33 [, 96 S.Ct. at 996, n. 33]. Because issuance of a search warrant is a judicial act, appearance at the probable-cause hearing was " 'intimately associated with the judicial phase of the criminal process.' " *Burns*, 500 U.S., at ——— [, 111 S.Ct. at 1938], quoting *Imbler*, 424 U.S., at 430, [96 S.Ct. at 994].

We further decided, however, that prosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police. We were unable to identify any historical or common-law support for absolute immunity in the performance of this function. 500 U.S., at ——— – ——— [, 111 S.Ct. at 1939]. We also noted that any threat to the judicial process from "the harassment and intimidation associated with litigation" based on advice to the police was insufficient to overcome the "[a]bsen[ce] [of] a tradition of immunity comparable to the common-law immunity from malicious prosecution, which formed the

basis for the decision in *Imbler.*" *Id.,* at —— [, 111 S.Ct. at 1939–40]. And though we noted that several checks other than civil litigation prevent prosecutorial abuses in advising the police, "one of the most important checks, the judicial process," will not be effective in all cases, especially when in the end the suspect is not prosecuted. *Id.,* at —— – —— [, 111 S.Ct. at 1941]. In sum, we held that providing legal advice to the police was not a function "closely associated with the judicial process." *Id.,* at —— [, 111 S.Ct. at 1941]. In *Buckley,* the Court held that a prosecutor's alleged false statements made at a press conference and alleged efforts to fabricate evidence were not entitled to absolute immunity because the prosecutor was functioning more as an administrator or an investigator than as an advocate.

█ In the case now before the court, the allegations and uncontroverted facts do not suffice to carry defendant's burden of showing he was acting as an advocate or is otherwise entitled to absolute protection from liability for damages. See *East Coast Novelty Co. v. City of New York,* 809 F.Supp. 285, 291–92 (S.D.N.Y.1992); *Metro Charities, Inc. v. Moore,* 748 F.Supp. 1156, 1164–65 (S.D.Miss.1990) (citing *Marrero v. City of Hialeah,* 625 F.2d 499, 505 (5th Cir.1980) *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981)).

5. *Qualified immunity* In *Langley v. Adams County,* 987 F.2d 1473, 1476 (10th Cir.1993), the Tenth Circuit discussed the analytical framework for a qualified immunity argument in a summary judgment motion.

Once a defendant asserts the affirmative defense of qualified immunity,

"[t]he plaintiff carries the burden of convincing the court that the law was clearly established." [*Pueblo Neighborhood Health Ctrs., Inc. v.] Losavio,* 847 F.2d [642,] 645 [ (10th Cir.1988) ]. More specifically, the plaintiff must "come forward with facts or allegations sufficient to show both that the defendant's alleged conduct violated the law and that that law was clearly established when the alleged violation occurred." *Id.* at 646. Plaintiff's burden cannot be met

merely by identifying in the abstract a clearly established right and then alleging defendant violated that right. *Id.* at 645. To satisfy his burden, the plaintiff must make a more particularized showing—"[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violated that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Once plaintiff has identified the clearly established law and the conduct that violated the law with sufficient particularity, the defendant then bears the burden as a movant for summary judgment of showing no material issues of fact remain which would defeat the claim of qualified immunity. *Losavio,* 847 F.2d at 646; *Powell v. Mikulecky,* 891 F.2d 1454, 1457 (10th Cir.1989). At this point we "consider in the light most favorable to the plaintiff all undisputed facts discernible from the pleadings and other materials submitted to supplement them by the time the motion for summary judgment is made." *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 719 (10th Cir.1988) (footnote omitted).

[*Patrick v. Miller,* 953 F.2d 1240, 1243 (10th Cir.1992) ] (alteration in original).

Although we view the evidence and draw all inferences in the light most favorable to the party opposing summary judgment, that party "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir.1992) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986)). "[A] movant need only point to those portions of the record which demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Id.* (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). When, as here, the nonmoving party will bear the burden of proof at trial, that party must go beyond

the pleadings and through affidavits, deposition testimony, answers to interrogatories, and admissions, designate specific facts showing there is a genuine issue for trial. *Id., see also Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553; Fed. R.Civ.P. 56(e). The presence or absence of qualified immunity is a question of law, which we review de novo. *Patrick,* 953 F.2d at 1243.

■ Plaintiff's contention that defendant acted without jurisdiction in applying for and executing the search warrants against plaintiff's business cannot survive defendant's claim of qualified immunity.

We do not believe plaintiff has shown that the law was clearly established that defendant did not have jurisdiction to enforce the state law violations alleged in the search warrant applications. The power of the state to enforce state sales tax collections upon sales made to non-Indians on Indian reservations was recognized in the case law at the time of the searches in this case. Indeed, as we read *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) and *State v. Oyler,* 15 Kan.App.2d 78, 803 P.2d 581 (1990), the state has the jurisdiction to enforce sales tax collections against retailers on an Indian reservation for sales made to non-Indians, particularly when the retailers are not owned by an Indian tribe. Therefore, we grant summary judgment against plaintiff's claim that defendant acted without jurisdiction.[2]

■ 6. *Injunctive or declaratory relief* Even if the court had not ruled that these claims were barred by the law in the case doctrine, we would grant judgment against plaintiff's claims for injunctive or declaratory relief on the grounds that plaintiff has not pleaded a continuing violation of the law to justify such equitable relief. The amended complaint asserts that defendant continues to attempt to collect taxes on goods sold by plaintiff and that such attempts are illegal. However, the illegality asserted by plaintiff in the amended complaint stems from the alleged absence of jurisdiction. We believe federal law permits the State of Kansas to enforce sales tax laws for the sale of goods to non-Indians. *Oklahoma Tax Commission v. Potawatomi Tribe, supra,* 498 U.S. at 514, 111 S.Ct. at 911. This does not mean that all means of enforcing the law are legal. But, plaintiff appears to assert that any means of enforcement would be illegal because of the lack of jurisdiction. Plaintiff does not specify a particular means of enforcement which will continue in violation of federal law or the Constitution. Under these circumstances, we believe defendant is correct in asking for dismissal of the claims for injunctive and declaratory relief under *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) and *Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

■ 7. *Mental and Emotional Suffering* Defendant argues that an allegation of mental and emotional suffering does not state a claim for relief under § 1983. This is correct. However, plaintiff is entitled to damages for mental and emotional suffering caused by a violation of § 1983, if a violation is proven. *Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307, 106 S.Ct. 2537, 2543, 91 L.Ed.2d 249 (1986).

### Summary and Leave to Amend

The court has interpreted plaintiff's amended complaint as primarily arguing that defendant acted without jurisdiction when he participated in the search of plaintiff's business. The complaint also claims that defendant made statements damaging to plaintiff's business. However, it is unclear whether this states a cause of action. This has not been directly argued by either side. We

---

**2.** Again, if plaintiff's complaint was broadly construed to contain a claim that defendant acted without probable cause, upon the record currently before the court we would refuse to grant summary judgment on qualified immunity grounds. Obviously, the law is clearly established that probable cause is required for the issuance of a search warrant. We believe a material issue of fact remains as to whether defendant's actions were objectively reasonable in light of the law and the information he possessed at the time of the application for search warrants and the execution of the search warrants. It is not clear to the court what facts were known to defendant at the relevant times in this case.

have not construed the amended complaint as raising a probable cause claim, although a few facts asserted in the amended complaint support such a claim. We shall grant defendant's motion to dismiss or, in the alternative, for summary judgment primarily upon the grounds that defendant had a proper jurisdictional basis for the actions alleged in the amended complaint. At the very least, it was not clearly established that a jurisdictional basis was absent. So, defendant is entitled to qualified immunity from damages liability. Plaintiff's claims for declaratory and injunctive relief shall also be dismissed. We disagree with the jurisdictional argument upon which these claims are premised. They are also barred by the law of the case doctrine. Finally, there is no case and controversy or good grounds to issue declaratory judgment absent a specific allegation of continuing or imminent enforcement of state law in a manner which violates federal law or the Constitution. In sum, defendant's motion is granted as to plaintiff's claims that defendant acted without jurisdiction. This is primarily a conclusion that the amended complaint fails to state a claim upon which relief can be granted.

■■■ It is a normal practice to allow leave to replead after granting a motion to dismiss. *Cortec Industries, Inc. v. Sum Holding,* 949 F.2d 42, 48 (2d Cir.1991); *Ricciuti v. NYC Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991); *Austin v. House of Vision, Inc.,* 385 F.2d 171 (7th Cir.1967). Of course, FED.R.CIV.P. 15 provides that leave to amend shall be "freely given when justice so requires." Generally, leave to amend is denied only "upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir.1993).

Plaintiff attempted to amend her complaint for a second time during the pendency of defendant's motion to dismiss, but the motion to amend was denied without prejudice, subject to reassertion if defendant's motion to dismiss was overruled. Still, plaintiff referred to the proposed second amended complaint while arguing against the motion to dismiss. Given these circumstances, as well as the common practice of permitting amendment after a motion to dismiss is granted, the court believes it should address whether leave to amend should be granted in this case.

■■■ We believe plaintiff should be granted leave to amend the complaint to assert claims against defendant regarding a search or arrest without probable cause. There should be no undue surprise or prejudice from these claims which arise from the same facts which originated this case and which have been discussed in other pleadings in this case. Nor is it obvious that such claims would be futile. There has been delay in this case and plaintiff has previously been afforded the chance to amend the complaint. Nevertheless, we cannot conclude that there has been undue delay in adding a claim or a dilatory or bad faith motive. We take no position upon whether plaintiff can add a party defendant at this point in the case. If plaintiff wishes to do so, a proper motion may be filed and considered by the U.S. Magistrate Judge.

### Conclusion

Defendant's motion to dismiss or for summary judgment is granted as to plaintiff's claims that defendant acted without jurisdiction. Plaintiff is granted leave to file a second amended complaint within ten days of the date of this order. If no amended complaint is filed, this case shall be closed.

**IT IS SO ORDERED.**