**TURNER AND BOISSEAU,
INC., Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant.**

Civil Action No. 95–1258–DES.

United States District Court,
D. Kansas.

Feb. 12, 1996.

Daniel G. Menzie, Peter G. Collins, Turner & Boisseau, Chartered, Wichita, KS, Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, Julie A. Bedinghaus, Turner & Boisseau, Chartered, Great Bend, KS, for plaintiff.

Lee M. Smithyman, David J. Roberts, Smithyman & Zakoura, Chtd., Overland Park, KS, for defendant.

### *MEMORANDUM AND ORDER*

SAFFELS, Senior District Judge.

This matter is before the court on the plaintiff's motion to dismiss (Doc. 22) the defendant's counterclaim (Docs. 18 and 20).

## I. *BACKGROUND*

In December 1988, the defendant, Nationwide Mutual Insurance Company ("Nationwide"), employed the plaintiff, Turner and Boisseau, Chartered ("Turner and Boisseau"), to represent the defendant's insured in *Murphy v. Smock,* a case filed in the District Court of Finney County, Kansas. The case was tried to a jury on July 20, 1992, but was settled prior to the conclusion of trial.

Turner and Boisseau filed suit in Barton County District Court on May 2, 1995, alleging that Nationwide owed the plaintiff $54,-280.19 for attorney's fees, expert's fees, and other costs incurred in defending *Murphy v. Smock* between March 17, 1992, and December 8, 1992. The defendant removed the action to federal court on May 23, 1995. On October 12, 1995, the defendant filed a counterclaim against the plaintiff, seeking in excess of $72,446.27 for fees and costs paid to the plaintiff prior to March 17, 1992. Nationwide claims that Turner and Boisseau breached its contract to provide the defendant with proper legal services and representation. The defendant alleges that the plaintiff, among other things, billed the defendant for fees and expenses that were substantially greater than necessary, provided inexperienced counsel at trial, and failed to provide appropriate legal advice. On November 7, 1995, the plaintiff filed a motion to dismiss the defendant's counterclaim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

## II. *DISCUSSION*

The court may not dismiss a cause of action for failure to state a claim under Rule 12(b)(6) unless it appears beyond doubt that

the claimant can prove no set of facts supporting its claim which would entitle it to relief. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989). In considering a Rule 12(b)(6) motion, the court must assume as true all well-pleaded facts, and must draw all reasonable inferences in favor of the nonmovant. *Housing Auth. of the Kaw Tribe of Indians v. City of Ponca City,* 952 F.2d 1183, 1187 (10th Cir.1991), *cert. denied,* 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992); *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in reviewing the sufficiency of a complaint is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support its claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). However, when a complaint shows on its face that the applicable statute of limitations has run, an action is subject to dismissal for failure to state a claim upon which relief can be granted. *Guy v. Swift & Co.,* 612 F.2d 383, 385 (8th Cir. 1980).

█ Turner and Boisseau submits that the gravamen of Nationwide's counterclaim lies in tort, and that the defendant's claim is therefore subject to the two-year statute of limitations found at Kan.Stat.Ann. § 60–513(a). According to the plaintiff, the defendant's cause of action accrued on July 22, 1992, when the parties in *Murphy v. Smock* settled. The plaintiff maintains that because section 60–513(a) governs the cause of action, the defendant's counterclaim filed on December 12, 1995, is time-barred. Turner and Boisseau argues in the alternative that even if the defendant has stated a claim for breach of contract, the contract was oral, and is barred under the three-year statute of limitations found at Kan.Stat.Ann. § 60–512(1).

Nationwide responds to the plaintiff's motion to dismiss by contending that Turner and Boisseau breached a written contract. If the defendant has stated a claim for breach of a written contract, its counterclaim would be timely under the five-year limitations period in Kan.Stat.Ann. § 60–511(1).

### A. *Tort vs. contract*

Nationwide alleges that it entered into a contract with Turner and Boisseau for legal representation of Nationwide and its insured in *Murphy v. Smock.* The defendant asserts that it had certain contractual expectations regarding the services the plaintiff was to provide, e.g., that the plaintiff "would use that degree of learning, skill, care and diligence ordinarily possessed and used by lawyers," and that the plaintiff "would undertake its legal tasks and duties utilizing an appropriate and reasonable amount of time, thereby generating charges and expenses of the size and type reasonably expected." The defendant also maintains that when it was considering transferring the defense of *Murphy v. Smock* to other attorneys, Lee Turner of Turner and Boisseau represented to the defendant that he would personally represent Nationwide in the case. Nationwide contends that the plaintiff breached its contract with the defendant by, among other things, charging more time and costs than were reasonable for the case, and by not providing representation through Mr. Turner at trial.

The plaintiff argues that notwithstanding the fact that the defendant alleges a breach of contract, Nationwide's counterclaim actually relates to the manner in which Turner and Boisseau defended the *Murphy v. Smock* lawsuit. According to the plaintiff, Nationwide's claims arise from duties which an attorney owes to its client, rather than from any contract between the parties, and the defendant's counterclaim is therefore subject to the two-year statute of limitations for torts.

█ Legal malpractice generally constitutes both a tort and a breach of contract. *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42, 54 (1990). Kansas courts have applied the following analysis in determining whether a particular claim is subject to the two-year statute of limitations for torts, or one of the longer limitations periods governing contracts:

> Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gra-

vamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort.

*Id.* at 54 (quoting *Bowman v. Doherty,* 235 Kan. 870, 686 P.2d 112, 120 (1984)). Thus, where a plaintiff alleges that his attorney failed to do that which he agreed to perform, the plaintiff's claim for relief is governed by the statute of limitations for contracts. *See Juhnke v. Hess,* 211 Kan. 438, 506 P.2d 1142, 1145 (1973) (three-year statute of limitations applied to attorney's failure to file timely appeal); *Pittman v. McDowell, Rice & Smith, Chartered,* 12 Kan.App.2d 603, 752 P.2d 711 (Ct.App.1988).

In *Pittman,* the plaintiff hired an attorney to serve a motion for child support on her exhusband and obtain a child support order. *Id.* at 713. The attorney filed the necessary motion, obtained proper service, and assisted the parties in reaching an agreement on child support. *Id.* at 718. The attorney failed, however, to file with the court a journal entry setting forth the agreement. *Id.* at 713, 718. The plaintiff sued the attorney in state court for breach of contract. *Id.* at 714. The district court granted the defendant's motion for summary judgment, finding that the plaintiff's cause of action was barred by the two-year statute of limitations for torts. *Id.* The court of appeals, however, reversed the trial court's decision. *Id.* at 718. The appellate court held that the attorney had failed to perform a duty arising under an express agreement with the plaintiff, and the plaintiff's claim was therefore timely under the three-year limitations period for oral contracts. *Id.*

In other legal malpractice cases, Kansas courts have held that the plaintiff's action was subject to the torts statute of limitations. *See Pancake House, Inc. v. Redmond,* 239 Kan. 83, 716 P.2d 575 (1986); *Chavez v. Saums,* 1 Kan.App.2d 564, 571 P.2d 62 (1977). These decisions are distinguishable from the case at bar, however. In *Pancake House,* the plaintiff sued his former attorney, alleging negligence, conflict of interest, and breach of implied contract and fiduciary duty. 716 P.2d at 578. All of the plaintiff's claims, though, were based on the attorney's

having filed suit against the plaintiff, not on any contract between the parties. *Id.* Similarly, the plaintiff in *Chavez* alleged that his attorney had violated his fiduciary and contractual relationships with the plaintiff by filing suit against the plaintiff. 571 P.2d at 64. Thus, in both *Pancake House* and *Chavez,* the alleged malpractice arose not from any agreement between the attorney and his client, but from a breach of the attorney's fiduciary duty imposed by law.

In the instant case, Nationwide alleges that Turner and Boisseau made express representations concerning the legal services which it would provide the defendant. Nationwide asserts, among other things, that Turner and Boisseau agreed to provide representation by Mr. Turner, and that the plaintiff breached its agreement when Mr. Turner did not handle the *Murphy v. Smock* trial. Where the alleged malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract. *Pancake House,* 716 P.2d at 578. True, some of the "contractual expectations" which Nationwide cites, e.g., that Turner and Boisseau would use "that degree of learning, skill, care and diligence ordinarily possessed and used by lawyers," may more aptly be described as an attorney's legal duties than duties imposed by contract. However, where doubt exists as to whether an action is based on implied contract or tort, words appropriate to a tort action should be disregarded and the petition treated as sounding in contract for purposes of determining the applicable statute of limitations. *Mackey–Woodard, Inc. v. Citizens State Bank,* 197 Kan. 536, 419 P.2d 847, 856 (1966).

The court must accept as true Nationwide's allegations and draw all reasonable inferences in favor of the counterclaimant. *Kaul v. Stephan,* 828 F.Supp. 1504, 1507 (D.Kan.1993); *First Nat'l Bancshares of Beloit, Inc. v. Geisel,* 853 F.Supp. 1337, 1340 (D.Kan.1994). Applying this standard, the court finds that Nationwide has sufficiently pled the existence of specific contractual duties on the part of Turner and Boisseau so as to state a claim for breach of contract. The court must now determine whether the

defendant's claim is subject to the five-year statute of limitations for written contracts, or the three-year limitations period for oral and implied contracts.

### B. *Written vs. oral contract*

■ In support of its argument that the parties entered into a written contract, the defendant refers the court to Exhibit A to the plaintiff's petition. The exhibit consists of the December 6, 1988, letter in which Nationwide asked Turner and Boisseau to review a suit filed against one of the defendant's insured, and the plaintiff's December 16, 1988, response, in which Turner and Boisseau informed Nationwide that it would file an answer to the petition. The defendant alleges that the two letters constituted a written contract under which the plaintiff agreed to charge and the defendant agreed to pay reasonable and appropriate attorney fees and expenses. The defendant also points to the February 20, 1992, letter in which Lee Turner of Turner and Boisseau stated that he would "be taking a more direct, active role in the handling of [the *Murphy v. Smock* ] case." Nationwide contends that by not providing representation through Mr. Turner at trial, Turner and Boisseau breached its February 20, 1992, promise.

The court first notes that the defendant specifically alleges breach of a *written* contract for the first time in its response to the plaintiff's motion to dismiss. In its counterclaim, the defendant alleges that the parties entered a contract, that the plaintiff made express representations, and that the defendant had contractual expectations. Nowhere in the counterclaim, however, does the defendant claim that the parties entered a written contract, or that the December 1988 letters between the parties constituted a contract. Nor, contrary to the defendant's assertion, did the plaintiff plead the existence of a written contract in its petition.

■ Even if the court reads Nationwide's counterclaim as alleging the existence of a written contract, however, we find that the five-year limitations period is not applicable to the defendant's claim. In order to fall within the five-year statute of limitations, an agreement, contract, or promise must contain all of its material terms in writing. *Zenda Grain & Supply Co. v. Farmland Indus., Inc.*, 20 Kan.App.2d 728, 894 P.2d 881, 893 (1995); *Chilson v. Capital Bank*, 10 Kan.App.2d 111, 692 P.2d 406, 408 (1984), *aff'd*, 237 Kan. 442, 701 P.2d 903 (1985). A contract which is partly in writing and partly oral is in legal effect an oral contract. *Chilson*, 692 P.2d at 408. Similarly, where a writing is dependent upon implied promises which are not express provisions of the written agreement, the three-year statute of limitations controls a cause of action based on the agreement. *Zenda*, 894 P.2d at 893–94.

Nationwide asserts that Turner and Boisseau charged excessive and inappropriate attorney fees and expenses, thereby breaching its written agreement to charge reasonable and appropriate fees. The documents to which the defendant refers, however, contain no reference to fees and expenses. Therefore, any agreement on the part of the plaintiff to charge reasonable and appropriate fees would have had to have been either an implied or oral agreement, and thus subject to the three-year statute of limitations. Similarly, any agreement on the part of Mr. Turner to represent the defendant at trial could only have been oral in nature, or implied from Mr. Turner's promise to "tak[e] a more direct, active role" in the case. Because Nationwide's counterclaim is not based on express provisions of any written document, the defendant's claim is not governed by the five-year statute of limitations in section 60–511(1). *See Zenda*, 894 P.2d at 894.

### C. *Accrual of cause of action*

■ Turner and Boisseau cites *Pancake House, Inc. v. Redmond* for the proposition that a cause of action accrues when the claimant can first file and prosecute its action to a successful conclusion. 716 P.2d at 579. The plaintiff contends that Nationwide's cause of action thus accrued no later than July 22, 1992, the day on which *Murphy v. Smock* was settled, and is therefore barred by the three-year limitations period for oral or implied contracts.

The Kansas Supreme Court noted in *Pancake House*, however, that there are at least

four theories as to when the statute of limitations begins to run in cases of legal malpractice:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.

716 P.2d at 579.

■ Kansas courts have applied the continuous representation rule to both tort and contract causes of action. *See, e.g., Morrison v. Watkins,* 20 Kan.App.2d 411, 889 P.2d 140, 145 (1995) (tort); *Pittman v. McDowell, Rice & Smith,* 12 Kan.App.2d 603, 752 P.2d 711, 715 (1988) (contract). Under the doctrine of continuous representation, the statute of limitations is tolled during the period the attorney continues to represent the client on the same matter out of which the alleged malpractice arose. *Pittman,* 752 P.2d at 715.

In its petition, the plaintiff alleges that it incurred fees in the *Murphy v. Smock* case through December 8, 1992. Thus, although the case settled on July 22, 1992, it appears as though the plaintiff may have continued to represent the defendant in the matter through December 8, 1992. If that is the case, the plaintiff's October 12, 1995, counterclaim may be timely under the continuous representation rule.

■ Where a party alleges in a motion to dismiss that an action is barred under the statute of limitations, the court's task, because it does not have before it a factual record, is only to determine whether the claimant has pleaded facts that show its suit is time barred. *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1399 (N.D.Ill.1994).

Where there is a question of fact as to the applicability of the statute of limitations, the motion to dismiss should be denied. *Stiles v. Porter Paint Co.,* 75 F.R.D. 617, 618 (E.D.Tenn.1976). Because the accrual date of the defendant's contract action is not readily apparent from the pleadings, the court must deny the plaintiff's motion to dismiss the defendant's counterclaim.

**IT IS THEREFORE BY THE COURT ORDERED** that the plaintiff's motion to dismiss (Doc. 22) is denied.